UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF NORTH CAROLINA
DURHAM DIVISION

| | |
|---|---|
| IN RE: ) | |
| ) | |
| John G. McCormick and ) | Case Nos. 06-80976 and |
| McCormick, LLC ) | 06-81321 |
| ) | |
| Debtors. ) | |
| _____) | |
| ) | |
| John A. Northen, Trustee ) | |
| in Bankruptcy for ) | |
| John G. McCormick ) | |
| and McCormick, LLC, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Adversary No. 07-09010 |
| ) | |
| Shahla Rezvani and Amir ) | |
| Rezvani, ) | |
| ) | |
| Defendants. ) | |
| ) | |

MEMORANDUM OPINION

This adversary proceeding came before the court on November 13, 2008, for trial. Stephanie Osborne-Rogers appeared on behalf of the plaintiff and Sara A. Conti appeared on behalf of the defendants. Having received and considered the evidence offered at the trial and the arguments presented on behalf of the parties, the court makes the following findings of fact and conclusions of law pursuant to Rule 52 of the Federal Rules of Civil Procedure and Rule 7052 of the Federal Rules of Bankruptcy Procedure.

## JURISDICTION

The issues presented in this proceeding are whether the defendants have a lien against any real property of the Debtor and, if so, whether any such lien may by avoided as preferential pursuant to section 547 of the Bankruptcy Code.[1]  The court has jurisdiction pursuant to 28 U.S.C. §§ 151, 157, and 1334, and the General Order of Reference entered by the United States District Court for the Middle District of North Carolina on August 15, 1984. This is a core proceeding within the meaning of 28 U.S.C.§ 157(b) which this court may hear and determine.

## FACTS

Prior to July 10, 2006, John G. McCormick ("Debtor") was engaged in the practice of law in Chapel Hill, North Carolina.  A significant portion of his practice involved real estate matters. Shahla Rezvani was a real estate broker in Chapel Hill.  Mrs. Rezvani became acquainted with the Debtor through various real estate closings handled by him in which Mrs. Rezvani was the agent for one of the parties.  After Mrs. Rezvani became acquainted with the Debtor, she and her husband, Amir Rezvani, at various times consulted the Debtor regarding legal matters of their own.

---

[1] These issues arise from the Trustee's objection to defendants' proof of claim in Case No. 06-80976 asserting that there is no basis for the claim to be treated as a secured claim (Docket #215) and from the Trustee's alternative claim in this adversary proceeding that any lien acquired by the defendants is avoidable pursuant to section 547. The issues were consolidated for hearing in this proceeding.

In June of 2006, Mr. And Mrs. Rezvani ("defendants" or "Rezvanis") were in the process of selling an interest in a family business located in California. As a result of discussions they had with the Debtor regarding the sale of the business, the Debtor was aware that they had received $300,000.00 from the sale of the business. During the latter part of June, the Rezvanis met with the Debtor at his office regarding another matter. At the conclusion of the discussions regarding that matter, the Debtor approached the Rezvanis about his obtaining a $300,000.00 loan from them. The Debtor described a real estate development located on Christopher Road in Chapel Hill and explained that money would be needed for that project. The Debtor proposed a 90-day loan and indicated that at the end of 90 days they could discuss whether the Rezvanis wanted to become involved in the project as investors rather than being repaid.

On June 27, 2006, the Rezvanis again met with the Debtor at his office and there were further discussions regarding their making a loan to the Debtor. During these discussions, the Rezvanis agreed to make a $300,000.00 loan to the Debtor which the parties agreed would be a 90-day loan at an interest rate of ten percent per annum. The Debtor also agreed that he would provide the Rezvanis with a deed of trust to secure the $300,000.00 promissory note. The Debtor and the Rezvanis parted with the understanding that the Debtor would proceed with the preparation of

the promissory note and deed of trust and Mrs. Rezvani would return later that day with a check for $300,000.00.

Later that day, Mrs. Rezvani did return with the check, which she delivered to the Debtor. The Debtor had prepared the promissory note and it was delivered to Mrs. Rezvani in exchange for the check. The Debtor did not deliver a deed of trust, however, but stated that a deed of trust had been prepared and sent to the Register of Deeds for recordation. The Debtor stated that the deed of trust would not be available until after it had been processed by the Register of Deeds and agreed that he would not cash the $300,000.00 check until after the deed of trust had been recorded.

On several occasions after June 27, the Rezvanis communicated with the Debtor in an effort to obtain possession of the deed of trust that he was supposed to prepare. When they spoke with the Debtor, he continued to assure them that the deed of trust had been recorded and would be available as soon as it was received from the Register of Deeds. During the course of these efforts, the Rezvanis learned that their $300,000.00 check had been cashed by the Debtor.

Their efforts to obtain a deed of trust from the Debtor were still underway on July 10, 2006, when the Rezvanis learned that the Debtor had disappeared and could not be located. Upon learning of this development the Rezvanis immediately employed attorney Robert

Maitland.  Further inquiry by Mr. Maitland revealed that no deed of trust securing their promissory note had been recorded and no such deed of trust could be located at the Debtor's office.

On July 12, 2006, the Rezvanis filed a civil action against the Debtor in the District Court of Orange County which included a summons, complaint and notice of lis pendens (the "Orange County Proceeding").  On August 2, 2006, a motion to approve the filing of an amended lis pendens was filed by the Rezvanis.  On August 7, 2006, an involuntary chapter 7 case against the Debtor was commenced in this court.  An order for relief was entered in the involuntary case on October 13, 2006.

The Rezvanis have not sought relief from the automatic stay and no judgment has ever been entered in the Orange County Proceeding.  The Rezvanis have filed a proof of claim in the Debtor's case.  The proof of claim is in the principal amount of $300,0000.00 and was filed as a secured claim apparently based upon the notice of lis pendens and amended notice of lis pendens that were filed in the Orange County Proceeding.  In addition to objecting to the Rezvani proof of claim, the Trustee commenced this proceeding on April 9, 2007.

ANALYSIS

In North Carolina, lis pendens is a statutory device for providing constructive notice of pending litigation in which the

title to real estate is at issue.[2]  If lis pendens is implemented in accordance with the applicable statutes,[3] all subsequent purchasers or encumbrancers of the real estate at issue will be bound by the proceedings that occur in the action identified in the notice of lis pendens.[4]  A notice of lis pendens, however, does not itself create a lien or interest in real property.  Its only effect is to establish the claimant's place in line vis-a-vis other

---

[2]The types of proceedings in which lis pendens may be utilized are enumerated in N.C. Gen. Stat. § 1-116(a) and consist of the following: (1) actions affecting title to real property; (2) actions to foreclose any mortgage or deed of trust or to enforce any lien on real property; and (3) actions in which any order of attachment is issued and real property is attached.  A notice of lis pendens is not available and will be stricken unless the underlying case falls within one of the categories described in N.C. Gen. Stat. § 1-116(a).  See Gilley v. Shoffner, 345 F.Supp.2d 563 (N.C.M.D. 2004); Cutter v. Cutter Realty Co., 144 S.E.2d 882 (N.C. 1965).  One of the contentions of the plaintiff is that the Orange County Proceeding does not fall within N.C. Gen. Stat. § 1-116(a) and therefore is not a proper basis for the filing of a notice of lis pendens.  As hereinafter noted, the court does not reach this and the other issues regarding the validity of the notice of lis pendens.

[3]A person or entity desiring the benefit of constructive notice under N.C. Gen. Stat. § 1-116 must file a separate notice of lis pendens.  Under N.C. Gen. Stat. § 1-116(c), the notice may be filed at or after the commencement of the action and, under N.C. Gen. Stat. § 1-116(d), must be filed with the clerk of superior court of each county in which any part of the real property is located.  Pursuant to N.C. Gen Stat. § 1-116(b) the notice must contain: (1) the name of the court in which the action has been commenced or is pending; (2) the names of the parties to the action; (3) the nature and purpose of the action; and (4) a description of the property to be affected by the action.  The notice of lis pendens is, however, "of no avail" unless service of process is effected in accordance with N.C. Gen. Stat. § 1-119.

[4]N.C. Gen. Stat. § 1-118.

claimants if the claimant is successful in the underlying litigation. Thus, the efficacy of a notice of lis pendens is wholly dependent upon the claimant obtaining a judgment establishing the lien or property interest sought in the action identified in notice of lis pendens.

There is no contention by the defendants that they obtained such a judgment in the Orange County Proceeding since it is undisputed that the Orange County Proceeding has remained dormant since the commencement of the chapter 7 bankruptcy case. Instead, the defendants argue that the judgment they obtained in the dischargeability proceeding filed against the Debtor operates in tandem with the notice of lis pendens to provide a lien that is effective as of the date on which the notice of lis pendens was filed in Orange County, July 12, 2006. The most obvious fallacy in this argument is that no lien was alleged or sought in the dischargeability proceeding and the judgment in that proceeding does not purport to award a lien to the defendants. Nor is there any mention of any of the Debtor's real property in the complaint. The only relief sought by the defendants in the dischargeability proceeding was that "the [Debtor's] debt to them in the amount of $300,000.00, plus interest and attorney fees, be determined to be non-dischargeable and excepted from discharge. . . ." Consistent with defendants' prayer for relief, the judgment adjudges that the Debtor's debt to the defendants "is non-dischargeable and excepted

from discharge" without any reference to the defendants having or acquiring any type of lien. The dischargeability proceeding and judgment thus do not involve title to real property and do not provide a lien that could support and relate back to the notice of lis pendens. See Jarrett v. Holland, 196 S.E. 314, 316 (N.C. 1938)(stating that "a complaint in which only a judgment for debt is sought does not give the action the force and effect of a lis pendens, unless the allegations in the complaint involve the title to lands."); Pegram v. Tomrich Corp., 166 S.E.2d 849, 851 (N.C. App. 1960)("An action to secure a personal judgment for payment of money is not an action 'affecting title to real property' within the meaning of G.S. § 1-116(a)(1), even though such a judgment, if obtained and properly docketed, is a lien upon land of the defendant.").

The defendants' final argument that they have a lien is based upon the counterclaim they filed in this adversary proceeding in which they assert that they are entitled to an equitable lien against real property of the Debtor. Defendants argue that they are entitled to an equitable lien because the Debtor breached a fiduciary duty owed the Defendants and was unjustly enriched by the receipt of the money the defendants loaned him. While the North Carolina cases have recognized equitable liens in situations involving breach of a fiduciary duty, they do not support the broad rule espoused by defendants that an equitable lien will be imposed

any time there has been a breach of fiduciary duty and the breaching party has received money which such party should not have received. In such a situation, the injured party obviously is entitled to a monetary judgment for the amount of the loss. However, in deciding whether to impose an equitable lien, the North Carolina decisions have focused upon the disposition of the money after it was received by the defaulting fiduciary. If ill-gotten funds can be traced to the purchase or improvement of specific real estate by the defaulting fiduciary, an equitable lien may be imposed against such real estate. See e.g., Fulp v. Fulp, 140 S.E.2d 708 (N.C. 1965). In such a circumstance, these decisions reason that the fiduciary would be unjustly enriched if allowed to retain such property without a lien being imposed against the property. See Guy v. Guy, 411 S.E.2d 403, 406-07 (N.C. App. 1991)("An equitable lien is applied where one party wrongfully spends another's funds to improve his own land or when one party expends his own funds to improve land which another has orally agreed to convey to him, but later refuses to do so. It is the unjust enrichment of the title holder which supports the imposition of an equitable lien."). Also, where there is an agreement to make specifically described property security for a debt or subject to a charge, an equitable lien may be imposed. See Winbourne v. Guy, 22 S.E.2d 220 (N.C. 1942).

The circumstances of the present case are distinguishable from

the circumstances involved in these and the other North Carolina cases that have upheld equitable liens. None of the proceeds from the loan made by the defendants was on hand when the involuntary bankruptcy case was filed.[5] There was no evidence regarding the disposition of the loan proceeds and no showing that any of the loan proceeds were used to buy or improve any of the real estate held by the Debtor when the bankruptcy petition was filed. There also was no showing that the Debtor ever identified a property that was to be subjected to a deed of trust in favor of the defendants, nor any evidence that the Debtor agreed to provide a deed of trust on all of his property. To the contrary, the defendants admit that the discussions with the Debtor never reached the point at which he agreed to include any particular property in a deed of trust. There was evidence that a project located on Christopher Road was alluded to by the Debtor during the discussions with the defendants, but that property was not owned by the Debtor, and the defendants admit that the Debtor never agreed that they would receive a deed of trust on that property. The evidence thus was insufficient to establish that the defendants are entitled to an equitable lien against any of the real property that was owned by the Debtor when the Chapter 7 petition was filed.

In summary, the notices of lis pendens filed by the defendants

---

[5]Defendants' counterclaim also included a constructive trust claim which was abandoned based upon their admitted inability to trace any of their loan proceeds as required in order to establish a constructive trust (Defendants' Trial Brief, p. 8).

in the Orange County Proceeding gave notice that the defendants were claiming a lien, but did not themselves create a lien. Instead, the efficacy of the notices of lis pendens depended upon the defendants obtaining a judgment that granted them a lien. The defendants never obtained a judgment establishing a lien in the Orange County Proceeding. The judgment in the dischargeability proceeding in this court did not establish a lien. In this proceeding, the court has concluded that the defendants are not entitled to a lien and will so adjudge in the final judgment in this proceeding. Without a judgment establishing a lien, the notices of lis pendens do not come into play and the defendants are left with an unsecured claim.[6] The defendants are one of a number of clients or business partners of the Debtor who suffered losses as a result of the Debtor's malfeasance and breach of fiduciary duty. Just as the other such claimants, the defendants are entitled to an unsecured claim for the full amount of their loss. However, in the context of this case, there is no unjust enrichment nor other equitable consideration that warrants granting a lien to the defendants that would elevate them above other similarly situated claimants. As conceded by the Trustee, the defendants are

---

[6]Because the notices of lis pendens are not supported by a judgment establishing a lien, the issues raised by the plaintiff regarding the validity of the notices of lis pendens are moot and need not be addressed. Likewise, having concluded that the defendants do not have a lien, the court need not address the issues involved in plaintiff's alternative preference claim.

entitled to an unsecured claim for $300,000.00, plus the other amounts due under their promissory note as of the petition date. Defendants also are entitled to and have obtained an adjudication that their debt is excepted from discharge. Neither law nor equity support any further relief for the defendants.

A separate judgment consistent with this memorandum opinion is being entered pursuant to Rule 9021 of the Federal Rules of Bankruptcy Procedure.

This 18th day of December, 2008.

_____
WILLIAM L. STOCKS
United States Bankruptcy Judge

PARTIES IN INTEREST

Stephanie Osborne-Rodgers, Esq.
P.O. Box 2208
Chapel Hill, NC 27514-2208

Sara A. Conti, Esq.
P.O. Box 939
Carrboro, NC 27510

Michael D. West, Bankruptcy Administrator